UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,

    Plaintiff,

 -v-          1:20-CV-1155

$102,090 IN U.S. CURRENCY,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:       OF COUNSEL:

HON. ANTOINETTE T. BACON  ADAM J. KATZ, ESQ.
Acting United States Attorney for
 the Northern District of New York
Attorneys for Plaintiff
445 Broadway, Room 218
James T. Foley Courthouse
Albany, New York 12207

GARY DAVIS
Claimant *pro se*
1 Fitch Street
Kingston, New York 12401

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION AND BACKGROUND

  On September 22, 2020, plaintiff the United States of America (the "Government") filed an *in rem* complaint against the defendant currency amounting to $102,090 (the "currency"). The Government contends that the

currency is subject to forfeiture under 21 U.S.C. §§ 841 and 881(a)(6) because it is money furnished in, intended to be furnished in, or proceeds traceable to a drug exchange. Gary Davis ("Davis" or "claimant"), by all accounts the currency's former owner, has appeared in this case to stake his own claim to the currency. Citing procedural failings on claimant's part, the Government moved to strike his claim under Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule") G on March 8, 2021.

Before resolving that tug of war between Davis and the Government, though, it is helpful to keep in mind how the currency came to be the prize the parties are now fighting over. In early 2019, the authorities[1] got a tip from a confidential informant (the "CI"), that claimant was dealing cocaine out of Kingston, New York. Dkt. 1 ("Compl."), ¶ 7. Claimant's alleged enterprise was neither particularly novel nor particularly complex, but in brief, claimant would supply drugs to another Kingston local (the "associate") who would then sell the drugs to the public. *Id.* According to the CI, the claimant would get a cut of the money once his associate had sold the cocaine. *Id.*

---

[1] The Government's submissions refer to the investigating team as the "authorities," and without any more specific information to go on the Court must do the same.

Operating on that understanding as to how Davis' scheme worked, the authorities worked to corroborate the CI's story by tailing claimant's alleged associate. Compl. ¶¶ 9-10. The authorities also conducted five controlled buys with the associate between May and July of 2019. *Id*. ¶¶ 9-11. Before and after each buy, the authorities watched the associate leave the same property—owned by claimant—and return in either of two cars also owned by claimant. *Id*. ¶ 10. The CI personally bought more than thirty grams of cocaine during the fifth controlled buy on July 10, 2019. *Id*. ¶ 11.

Apparently satisfied of the associate's culpability, the authorities arrested him on the spot after the fifth buy. Compl. ¶ 11. The authorities took the associate back to the police station, *Mirandized* him, and got a confession from him in short order. *Id*. Specifically, the associate confessed to selling cocaine more than a dozen times. *Id*.

Also on July 10, 2019, the authorities executed search warrants on two properties purportedly owned by Davis, including the one the associate left and returned to for each controlled buy. *See* Compl. ¶ 12. The authorities took a special interest in that property, in which they believed the associate and claimant both lived. *Id*. at ¶ 14. On the second floor of that property—apparently in claimant's bedroom closet—were two safes. *Id*. ¶ 14, 16. According to the Government, drug-packaging materials, a digital scale,

3

"cutting agents," a grinder, and vinyl gloves were all perched on top of both safes. *Id.* ¶ 16.

Inside the safes sat the currency. Compl. ¶¶ 17, 18. The Government alleges that the safes also contained 448.4 grams of cocaine, 296.6 grams of marijuana, and three handguns. *Id.* ¶ 18.

After the authorities seized the guns and currency, Davis was charged with possession of a controlled substance in the Third Degree and multiple gun charges in state court. Compl. ¶ 21. Those charges have yet to be adjudicated. *Id.* Meanwhile, in June of 2020, claimant filed an administrative claim with United States Customs and Border Protection for the currency claiming that the currency was his "inheritance and life savings." *Id.* ¶ 22.

On September 22, 2020, the Government filed a complaint seeking a warrant of arrest *in rem* for the currency. Dkt. 1. On September 23, 2020, the Court issued that warrant under Supplemental Rule G. Dkt. 2. The Government served Davis's defense attorney for his underlying state court criminal charges with the complaint, the arrest warrant, a copy of Supplemental Rule G(5), and a notice of his potential claim on October 19, 2020. Dkt. 16-2 ("Katz Aff."), ¶ 3. On October 20, 2020, claimant's attorney responded that he would not be advising claimant in this action, but met with him and gave him the documents nevertheless. *Id.* ¶ 4.

The notice Davis received from his attorney afforded him thirty-five days from the day he received it to file a claim before this Court. Dkt. 16-4, p. 2.[2] That thirty-five day window is the minimum amount of time a direct notice can grant a claimant under Supplemental Rule G(4)(b)(ii)(B). For every other potential claimant, their time to file a claim expired on January 15, 2021. Dkt. 12.

On December 1, 2020, Davis faxed the Government a claim for the currency. Katz Aff. ¶ 6. On December 3, 2020, the Government filed a motion stating its intent to construe claimant's fax as a timely claim, and asking that the Court do the same.[3] Dkt. 3. On December 4, 2020, United States Magistrate Judge Thérèse Whiley Dancks denied the Government's motion, and instead construed claimant's fax as a request for more time to file a claim and an answer to the Government's complaint. Dkt. 4. In the same text order, Magistrate Judge Dancks afforded claimant until December 23, 2020 to answer the Government's complaint or move under Federal Rule of Civil Procedure ("Rule") 12 to dismiss the complaint. *Id.*

Davis apparently got some portion of Magistrate Judge Dancks' message, but not all of it. He promptly filed a claim for the currency on December 8, 2020. Dkt. 7. In that claim, he alleges that the currency is his daughter's

---

[2] Pagination Corresponds with CM/ECF.
[3] Claimant's submission was in any case seven days late by the Court's reckoning.

inheritance, left to her by her godmother to be used in case of emergency or after claimant's death. *Id.* at 2. As fate would have it, claimant alleges that his daughter is in precisely such an emergency, because she needs a costly brain surgery that she cannot afford without the currency. *Id.* Claimant also contends that the warrant was invalid. *Id.* Finally, claimant contends that because he is elderly and somewhat reclusive, his only expenses are his electric and cable bills, and in any case it would make sense for him to have $102,090 in cash from his lifetime of steady employment. *Id.*

Davis' submission satisfied his obligation to file a claim to the currency, but remember that Magistrate Judge Dancks also charged him to file an answer to the Government's complaint by December 23, 2020. Dkt. 4. He did not. In addition to the usual problems posed by parties ignoring court orders, Supplemental Rule G(5)(b) requires a claimant to file an answer or a Rule 12 motion within twenty-one days of filing a claim. As discussed more fully below, failing to timely file an answer as required by Supplemental Rule G(5)(b) is no trifling matter, and frequently results in a claim's dismissal.

Even so, the Government let sleeping dogs lie and this case lay dormant until January 20, 2021. Katz Aff. ¶ 11. On that day, the Government sent Davis a letter informing him that he had missed his deadline to file an answer. *Id.* The Government further advised claimant that if he did not file one by February 3, 2021, it would move to strike his claim. *Id.*

6

The Government continued to make efforts to reach Davis and get him to file an answer until March of 2021.  Compl. ¶¶ 12-13.  Claimant never responded and never asked the Court or the Government for help with procedure.[4]  *See id.* ¶¶ 13-14.

In the absence of any communication from claimant that he needed help with procedure or otherwise getting his answer ready, the Government finally moved to strike his claim on March 8, 2021.  Dkt. 16.  To this day, claimant has not responded to that motion or filed an answer.  The Court will now decide the Government's motion on its papers and without oral argument.

## II. DISCUSSION

A claimant hoping to challenge a forfeiture action must prove both constitutional and statutory standing.  *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).  Constitutional standing is satisfied in forfeiture cases as it is in any other case before a federal court built on Article III: by demonstrating a case or controversy in which the claimant has a sufficient interest.  *United States v. Premises & Real Prop. At 4492 S. Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258, 1262 (2d Cir. 1989).

---

[4] The Government served claimant several times throughout this case to no avail.  *See, e.g.*, Dkts. 5 (noting service of Government's request that the Court construe fax as claim); 6 (noting service of text order setting schedules); 14 (noting service of status report on unsuccessful efforts to move case forward); and 17 (noting service of motion to strike).

7

Statutory standing, by contrast, is satisfied by a claimant's compliance with Supplemental Rule G and the Civil Asset Forfeiture Reform Act of 2000. *See, e.g.*, *United States v. $14,000.00 U.S. Currency*, 2020 WL 1815756, at *2 (W.D.N.Y. Apr. 10, 2020). Remember, Supplemental Rule G(b) requires a claimant to file an answer to the Government's complaint or to move to dismiss it under Rule 12 within twenty-one days of their asserting a claim to the property to be forfeited.

In the absence of statutory standing, a claim to property subject to forfeiture may be stricken. *United States v. $11,585.00 & $24,077.00 in U.S. Currency*, 2019 WL 1877295, at *2 (N.D.N.Y. Apr. 26, 2019). But unlike constitutional standing, statutory standing does not divest a court of jurisdiction, and so the court has discretion in deciding whether to strike a procedurally defective claim. *See 4492 S. Livonia Rd.*, 889 F.2d at 1262.

A district court can decline to strike a claim and instead extend the claimant's window to comply with the Supplemental Rules if the claimant can demonstrate excusable neglect. *$11,585.00 & $24,077.00 in U.S. Currency*, 2019 WL 1877295, at *2. Courts weigh whether neglect was excusable based on four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay and whether it was within the reasonable control of the party in need of an extension of deadlines; and

(4) whether the party seeking the extension acted in good faith. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011).

None of those factors tip affirmatively in Davis' favor. Although it must be said that the Government has not identified any particular prejudice it would face if the Court denied its motion to strike, either. The first factor therefore does not meaningfully undermine claimant's right to an extension. *See $11,585.00 & $24,077.00 in U.S. Currency*, 2019 WL 1877295, at *2.

The second factor, by contrast, counsels more clearly against granting Davis yet another extension. Claimant has sat on his rights and failed to follow through on his obligations to enforce them for three months now. Dkt. 4 (setting deadline of December 23, 2020 for claimant to file answer or Rule 12 motion). In all that time, the Government has repeatedly informed him of his ongoing responsibility to file an answer or a Rule 12 motion and expressed a willingness to be flexible to accommodate him despite his delay. Katz Aff. ¶¶ 11-13. Claimant has responded with silence. *Id.* ¶ 14. Indeed, even as of today, claimant has not filed anything since he filed his claim on December 8, 2020. Dkt. 7.

Moreover, Davis's challenge to the forfeiture is the only claim before the Court. In other words, granting claimant yet another extension would allow this case to limp on without any indication that claimant would finally take advantage of his extra time and file an answer or Rule 12 motion. Though

not outrageous, claimant's delay *is* significant, and every minute he does not hold up his end of the bargain is another minute this case stays on the docket when it could otherwise be resolved.  *See United States v. $541,395.06 U.S. Currency*, 2012 WL 3614294,at *5 (W.D.N.Y. Aug. 21, 2012) (finding no excusable neglect after claimant failed to file answer within one day of deadline in absence of explanation of mitigating factors).

The third factor—Davis' reasons for his delay—is typically the most decisive, and it cuts deeply against claimant in this case.  *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366-67 (2d Cir. 2003) (noting that Second Circuit focuses on third factor in excusable neglect inquiry and that party faced with clear rule "will, in the ordinary course, lose" on excusable neglect question).  Whatever reasons claimant has for failing to properly file an answer or Rule 12 motion, the Court is unaware of them because he has failed to respond to the Government's motion.

Of course, the Court does know that Davis is a *pro se* claimant, and that certainly justifies a certain amount of procedural irregularity.  However, Magistrate Judge Dancks and the Government both gave claimant clear direction as to his responsibility to file an answer or a Rule 12 motion and the deadlines to do so, and he still failed to follow through.  Dkt. 4, Katz Aff. ¶¶ 11-14.  Whatever reasons for this delay he may have in addition to his *pro se* status, they cannot be good enough to explain away the sheer

extent of his delay despite his clear guidance. The third factor counsels against a finding of excusable neglect. *See, e.g.*, *$11,585.00 & $24,077.00 in U.S. Currency*, 2019 WL 1877295, at *3 (finding no excusable neglect for *pro se* claimant when claimant had notice or Supplemental Rule G and deadlines to comply).

Finally, there is minimal evidence of good faith to redeem Davis' neglect. Once again, he has not provided any explanation at all as to why he has failed to participate in this litigation beyond filing his claim. Additionally, his failure to so much as contact the Government for clarification as to his obligations suggests that his capacity to show good faith in any case would be severely limited. Katz Aff. ¶ 14.

In short, Davis's lack of an explanation for his delay and the extent of that delay foreclose a finding of excusable neglect. *Silivanch*, 333 F.3d at 366-67. Accordingly, his claim must be stricken. *See, e.g.*, *$11,585.00 & $24,077.00 in U.S. Currency*, 2019 WL 1877295, at *3 (striking claim and terminating *pro se* claimant after one-month delay despite claimant's opposition). Similarly, because all other potential claimants are now barred, Dkt. 12, no viable claim can follow in this case. The Court must therefore enter a final order of forfeiture in the Government's favor.

## III. **CONCLUSION**

Ultimately, Davis argued that he was entitled to the currency, but was unwilling or unable to manage even the first portion of his responsibilities in reclaiming it.  The Government and the Court gave him ample opportunities to correct the issue but were greeted only with silence.  Claimant now receives silence in return, and this forfeiture claim is at an end.

Therefore, it is

ORDERED that

1. The Government's motion to strike claimant Gary Davis's claim is GRANTED;

2. The Clerk of the Court is directed to strike Gary Davis's claim from the docket and to provide Gary Davis with a copy of this Memorandum-Decision and Order;

3. The Clerk of the Court is directed to terminate Gary Davis as a claimant in this action; and

4. The Clerk of Court is directed to enter a final order of forfeiture in the Government's favor.

The Clerk of Court is directed to enter judgment accordingly and close the case file.

IT IS SO ORDERED.

Dated: April 13, 2021
      Utica, New York.

David N. Hurd
U.S. District Judge